IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAOFIK OLATUNJI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:24-cv-01644-N-BT |
| | § | |
| AT&T SERVICES INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Taofik Olatunji filed this *pro se* employment discrimination and retaliation suit against his former employer AT&T Services Inc. (AT&T). Before the Court is Defendant AT&T's Motion for Summary Judgment (ECF No. 47). For the reasons stated below, the District Judge should **GRANT** Defendant's Motion for Summary Judgment.

### *Background*

Olatunji worked for AT&T from 2014 to 2022 as a premises technician. Third Am. Compl. at 4, ¶ 16 (ECF No. 27); AT&T App. at 101–03 (Plaintiff's separation proposal) (ECF No. 49). In that role, Olatunji performed "all aspects of installing, repairing, disconnecting, modifying, upgrading and downgrading of customer service offerings" at customer locations. AT&T App. at 8 (ECF No. 49) (providing the job description for a premises technician); *see also id.*, Decl. of Freeman at 1, ¶ 3. Olatunji reported to various supervisors during his employment,

including Nathan Dvorak (a non-Black supervisor) from January 2020 to August 2021 and Thaddeus Fouche (a Black supervisor) from August 2021 to January 2022. *Id.*, Decl. of Dvorak at 115, ¶ 3 (ECF No. 49), Decl. of Fouche at 104, ¶ 4. Throughout his employment, Olatunji consistently received below average performance reviews. AT&T App. at 129–34 (ECF No. 49) (providing performance reviews from 2018 to 2020); *see also id.*, Decl. of Dvorak at 117–20, ¶¶ 8–19 (ECF No. 49) (detailing Olatunji's performance deficiencies); *id.*, Decl. of Fouche at 105– 08, ¶¶ 5–14 (same). For example, in 2018, 2019, and 2020, Plaintiff received end-of-year appraisals of "Does Not Meet Expectations." AT&T App. at 129–34 (ECF No. 49). The 2020 appraisal detailed Olatunji's "unwillingness to follow company policies, including those related to the treatment of customers, proper installation and repair practices, and route adherence." *Id.* at 130.

On September 15, 2020, Olatunji met with Area Manager Milton Freeman (a Black supervisor), Director of Network Services Jackie Counts, and Union Chief Steward Alex Doblado, to discuss Olatunji's allegations that Dvorak was unfairly targeting Olatunji and did not provide him with adequate support. *Id.* at 98; Pl.'s App. at 16–18 (ECF No. 57). Olatunji shared that he felt as though there was a "target on [his] back" and Dvorak engaged in harassment. *Id.* Olatunji also alleged that Dvorak used "racist language" because Dvorak relayed to Olatunji that a customer complained about Olatunji's use of "ghetto language." *Id.* at 17. Olatunji believes Dvorak should have recognized the customer's comment was "malicious and unreasonable" by using "a disrespectful, unprofessional, inappropriate, racist

2

epithet." AT&T App. at 252 (ECF No. 49) (emphasis omitted). Olatunji also accused Dvorak of stalking and harassment due to Dvorak's unannounced visits during Olatunji's work hours. Pl. App., Decl. of Olatunji at 7–8, ¶¶ 36–38 (ECF No. 58).

Olatunji eventually confronted Dvorak about his complaints when Dvorak made an unannounced visit to the residence where Olatunji was supposed to be working on January 4, 2021. AT&T App., Decl. of Dvorak at 119, ¶ 16 (ECF No. 49). It is standard practice for AT&T supervisors "to make unannounced visits, review performance, and provide feedback to all technicians." *Id.*, Decl. of Freeman at 6, ¶ 20; *see also id.*, Decl. of Fouche at 104, ¶ 3 ("As a part of my role [as Manager Network Services], I'm expected to conduct unannounced visits to the worksites of every technician under my supervision."). When Dvorak could not find Olatunji, he used AT&T's vehicle tracking system to locate him at a McDonald's parking lot. *Id.*, Decl. of Dvorak at 119, ¶ 16. According to Dvorak, when he tried to speak with Olatunji, Olatunji "appeared upset and unwilling to listen to [Dvorak's] feedback." *Id.* But according to Olatunji, he accused Dvorak of harassment and informed Dvorak that he would be filing a complaint with the Equal Employment Opportunity Commission (EEOC). Pl.'s App., Decl. of Olatunji at 8, ¶ 38 (ECF No. 58). After this incident Olatunji took a two-month leave of absence. AT&T App., Decl. of Dvorak at 120, ¶ 17 (ECF No. 49).

Preceding his termination, Olatunji progressed through AT&T's discipline policy. Pursuant to AT&T's Supervisor Manual, when a performance problem

arises, supervisors are expected to informally discuss and coach the employee on the performance problem. AT&T's Br. at 3 (ECF No. 48). If this proves unsuccessful, or if the employee commits a serious policy violation, AT&T begins "escalating disciplinary steps." *Id.* First, the supervisor will issue a Performance Notice (PN) which "records a formal discussion between a supervisor and employee to address a serious (or recurring) job performance problem and is active for six months." *Id.* Next, the supervisor will issue a Written Reminder (WR) which documents a formal conversation between the supervisor and employee about a "very serious performance problem" and is active for nine months. *Id.* (emphasis omitted). And finally, a supervisor will issue a Decision-Making Leave (DML) which is active for twelve months. *Id.* at 3–4. During a DML, an employee may be terminated for policy violations that are considered worthy of dismissal, or the policy violation will be placed in the employee's personnel file. *Id.* at 4.

Olatunji's supervisors had many informal discussions with him about his performance, documenting various performance deficiencies from customer service to safety. AT&T App. at 102 (ECF No. 49). Olatunji was placed on a WR on March 4, 2021, for being at McDonald's on January 4 "when he should have been at a customer's residence working." *Id.* And he was also placed on a Performance Improvement Plan (PIP) due to his low performance metrics. *Id.* Olatunji was eventually placed on a PN for failing to adhere to his PIP, and finally, Olatunji was placed on a DML on October 27, 2021, for failing to secure company assets. *Id.*; *see also* AT&T App., Pl.'s Dep. at 204–05, 1:28:38–1:31:32 (ECF No. 49) (Olatunji

admitting that he "made a mistake" by "leaving [his] equipment in the back of a supervisor's truck" and taking "responsibility for [his] actions").

On December 14, 2021, while on his DML, Fouche was on vacation leaving Dvorak as Olatunji's acting supervisor. *Id.*, Decl. of Fauche at 106, ¶ 10. That morning, Olatunji was assigned three jobs with Olatunji's estimated arrival at the third and final job between 1 P.M. and 3 P.M. *Id.*, Decl. of Dvorak at 121, ¶ 24; *see also id.*, Pl.'s Dep. at 211, 2:23:09. Olatunji claims that he did not finish his second job assignment until after 8 P.M, and after completing that job, Olatunji clocked out and ceased work. *Id.* at 170. AT&T policy requires premises technicians to notify the customer or supervisor if they cannot complete a job assignment. *Id.* at 12 ("Technicians are responsible for checking their work schedule or calling the supervisor to verify updates and changes. Technicians are required to abide by their work schedule and report at the start of their workday prepared to work."), 21 ("Regularly inform the customer of status while working the job. . . . Notify and explain if work cannot be completed."), 23 ("Technicians must notify the supervisor as soon as it becomes apparent that they will be unable to complete the workload, keep commitment times, or if their workload is otherwise in jeopardy.").

However, Olatunji failed to notify anyone that he would not attempt the third job assignment on December 14. When Dvorak realized Plaintiff did not attend his third job assignment, he called Olatunji—but Olatunji did not answer the call. *Id.*, Decl. of Dvorak at 121–22, ¶ 27. Following the call, Dvorak and Olatunji engaged in the following communication over text:



*Id.* at 151. Dvorak tried to call Olatunji one more time, but to no avail. *Id.* at 121–

22, ¶ 27.

Afterward, Dvorak held an investigative meeting with Olatunji and a union

representative. *Id.* at 152–54. Olatunji explained that he did not answer Dvorak's

attempts to contact him because he knew Dvorak would have dispatched him to

his final job assignment. *Id.* at 153. Olatunji also justified his actions by citing an

informal policy that premises technicians need not dispatch to job assignments or

contact customers after 8 P.M. *Id.* Olatunji's supervisors, including Fouche,

Dvorak, Milton, and AT&T's Human Resources Department, concluded that this

incident warranted termination. *Id.* at 156; *see also id.*, Decl. of Freeman at 5, ¶ 13

("I agreed that Mr. Olatunji's infractions warranted a recommendation for

termination."). Plaintiff had the opportunity to contest his termination at an

internal hearing called his "Day in Court," but Plaintiff did not attend. *Id.* at 99;

*id.*, Decl. of Freeman at 6, ¶ 18; *id.*, Pl.'s Dep., at 218–19, 2:38:03–2:38:50. As a

result, AT&T terminated Olatunji's employment on January 7, 2022. *Id.* at 101.

Following his termination, Olatunji filed a charge of discrimination with the EEOC and timely filed the present civil action asserting claims of race discrimination and retaliation under Title VII, § 1981, and the Texas Commission on Human Rights Act. *See generally* Third Am. Compl. (ECF No. 27). AT&T moved for summary judgment on Olatunji's claims, Olatunji filed numerous responses, and AT&T replied. The motion is ripe for determination.

### *Legal Standards*

### *Summary Judgment*

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by showing that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's,* 939 F.2d 1257, 1263 (5th Cir. 1991) and Fed. R. Civ. P. 56(e)).

All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (quoting *Reid v. State Farm Mut. Auto. Ins.*, 784 F.2d 577, 578 (5th Cir. 1986)). The court cannot make a credibility determination given conflicting evidence or competing inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

*Discrimination and Retaliation*

The summary judgment analysis is the same for racial discrimination claims under § 1981, Title VII, and the Texas Commission on Human Rights Act. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004); *Roberts v. Dall. Indep. Sch. Distr.*, 2020 WL 777267, at *4 n.10 (N.D. Tex. Feb. 18, 2020) (Starr, J.) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999)). Such claims may be proved through direct evidence, statistical proof, or the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)); *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008).

If the plaintiff establishes a prima facie case, an "inference of intentional discrimination" arises. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)). Once the defendant has responded with a legitimate, nondiscriminatory reason,

> [t]he plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the pretext alternative, the plaintiff must introduce "*some* evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false *and* that illegal discrimination was the actual reason." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998) (emphasis in original). Under the mixed-motive alternative, the plaintiff need only present sufficient evidence for a reasonable jury to conclude that race, color, sex, religion, or national origin was a motivating factor for the employment practice at issue. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003).

"[T]he burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in *McDonnell Douglas* . . . is also applicable to Title VII unlawful retaliation cases." *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir. 1996)*; Roberts,* 2020 WL 777267, at *4 ("The summary judgment analysis is substantively identical for claims of race discrimination and retaliation under Title VII, the state law equivalent in the Texas Commission on Human Rights Act, and Section 1981 after the plaintiff makes a *prima facie* case."). Therefore, once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Long,* 88 F.3d at 304–05. "If the defendant introduces evidence which, if true, would permit the conclusion that the adverse employment action was nondiscriminatory, the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff." *Id.*

## *Analysis*

### *Preliminary Matters*

Both parties object to portions of each other's exhibits. A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c). *See Celotex Corp.,* 477 U.S. at 324. "At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.,* 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) (emphasis in original). While the form of the summary judgment evidence need not be

admissible, the content of the evidence must meet evidentiary requirements. *See*

*Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017).

1. Olatunji's Objections

In his various responses to AT&T's motion for summary judgment, Olatunji

suggests that he will "file separate motion[s] to strike" certain assertions made by

AT&T. *See* Pl.'s Br. in Opp. at 5, 6 (ECF No. 56); *see also* Pl.'s Br. in Opp. at 4, 6

(ECF No. 52). For example, Olatunji claims that AT&T's assertion that he "acted

argumentatively with an unhappy customer and failed to involve a manager" is

"conclusory and based on hearsay." Pl.'s Br. in Opp. at 4–5 (ECF No. 56). And

Olatunji also claims that AT&T improperly denies the existence of the alleged 8

P.M. policy without supporting evidence. *Id.* at 6.

"Federal Rule of Evidence 103(a)(1) requires an objecting party to make

specific objections detailing the specific evidence the party wishes to exclude and

stating the specific grounds upon which each piece of evidence should be

excluded." *Patton v. Meridian Sec. Ins. Co.*, 617 F. Supp. 3d 516, 526 (N.D. Tex.

2022) (citing *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004)).

"Objections that lack specificity fail to satisfy the requirements of Rule 103, and a

loose or imprecise objection does not preserve error." *Nelson v. Cottonwood Fin.*

*Tex., LLC*, 2023 WL 5312214, *6 (N.D. Tex. Aug. 16, 2023) (Lindsay, J.) (citing *HCI*

*Chems. (USA), Inc. v. Henkel KGaA*, 966 F.2d 1018, 1021 (5th Cir. 1992)).

Olatunji's vague assertions that certain statements are "conclusory and

based on hearsay" or not supported by evidence "do not meet the specificity

requirement of Rule 103(a)(1)." *Tucker v. SAS Inst.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006); *see also Coleman v. Bank of Am., N.A.*, 2017 WL 3334104, at *3–4 (N.D. Tex. Aug. 4, 2017) (Fish, J.) (denying the plaintiff's motion to strike because the plaintiff's "vague assertions" that certain declarations contained "inadmissible hearsay" were not specific). Therefore, Olatunji's purported objections to AT&T's summary judgment evidence should be **DENIED**. "Even so, the court will not consider any evidence that is plainly inadmissible." *Patton*, 617 F.3d at 526 (citing Fed. R. Civ. P. 103(d)).

### 2. AT&T's Objections

AT&T objects to Olatunji's summary judgment evidence, including objections to his declaration, the declaration of an allegedly undisclosed witness, and a portion of Olatunji's deposition testimony. *See* AT&T's Reply at 17–22 (ECF No. 61). Because Olatunji's exhibits and declaration, even if considered, do not affect the disposition of AT&T's motion, AT&T's objections are overruled as moot. *See Garcia v. Delta Cos.*, 2023 WL 2950632, at *5 (N.D. Tex. Feb. 24, 2023) (Ramirez, J.) (collecting cases denying as moot evidentiary objections), *adopted by* 2023 WL 2597896 (N.D. Tex. Mar. 22, 2023) (Starr, J.).

### *Discrimination*[1]

To state a claim for discrimination under Title VII, a plaintiff must plead that he "(1) is a member of a protected class; (2) was qualified for the position he held;

---

[1] Olatunji vaguely references color discrimination in his live pleading. *See* Third Am. Compl. at 31 (ECF No. 27) (alleging that he was treated "differently on the

(3) was subject to an adverse employment action; and (4) was treated less favorably than others similarly situated outside of his protected class." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (citing *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)). Here, AT&T contends that Olatunji cannot meet the fourth prong because he has failed to adduce evidence of similarly situated individuals who were treated more favorably. The Court agrees.

The Fifth Circuit has held that "plaintiffs offering another employee as a comparator must demonstrate that the employment actions at issue were taken under 'nearly identical' circumstances." *Martin v. Budget Rent-A-Car Sys. Inc.*, 432 F. App'x 407, 410 (5th Cir. 2011) (per curiam). And circumstances are considered nearly identical "when the employees being compared (1) held the same job responsibilities, (2) shared the same supervisor, or had their employment status determined by the same person, and (3) have essentially comparable violation histories." *Id.* Stated differently, the plaintiff must show that a non-Black premises technician, who engaged in the same misconduct under similar circumstances, was not terminated.

Olatunji offers three comparators who he alleges committed similar workplace violations but were not terminated: (1) Dakota L., (2) Jerry B., and (3)

---

basis of his race and color"). However, as AT&T correctly notes, Olatunji's pleading is "devoid" of allegations supporting a discrimination claim based on color, and rather, "Plaintiff apparently uses the terms race and color interchangeably." *See* Def.'s Br. at 14, n.4 (ECF No. 48). Therefore, the Court only addresses Olatunji's discrimination claims on the basis of race.

Tony W. However, none of these alleged comparators are similarly situated to Olatunji.

First, Olatunji contends that Dakota L. committed comparable workplace violations, such as violations for customer mistreatment and failure to complete his monthly safety checklist, but was not disciplined as harshly as Olatunji. However, Dakota L.'s company policy violations are not nearly identical to Olatunji's violations. Dakota L. committed minor infractions, such as failing to wear gloves and not preparing a checklist. *See Crosby v. Comput. Sci. Corp.*, 470 F. App'x 307, 309 (5th Cir. 2012) (per curiam) (noting that comparator's company violation was not "nearly identical" to the plaintiff's because it violated a "different aspect" of the employer's personnel policy); *Hardison v. Skinner*, 2022 WL 2668514, at *3 (5th Cir. July 11, 2022) (per curiam) ("[C]ritcally, the plaintiff's *conduct* that drew the adverse employment decision must have been 'nearly identical' *to that of the proffered comparator* who allegedly drew dissimilar employment decisions.") (emphasis in original) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).

Even if Dakota L. committed nearly identical policy violations as Olatunji, Olatunji does not produce evidence that Dakota L. was treated more favorably. Olatunji admits that he and Dakota L. were placed on a DML "**for identical reasons**[.]" Pl.'s Br. in Opp. at 8 (ECF No. 56) (emphasis in original). But Olatunji ignores evidence showing that AT&T terminated Dakota L.'s employment after he committed workplace violations while on a DML. AT&T's App., Decl. of Dvorak at

14

125, ¶ 43 (ECF No. 49); *see also id.* at 163–64 (Dakota L.'s separation proposal). This evidence shows that Dakota L. was not treated more favorably than Olatunji. Instead, the evidence shows Dakota L. was placed on a DML and was terminated—just like Olatunji. *See Martin*, 432 F. App'x at 410 (holding that comparator was not treated more favorably when employee was also written up and eventually fired). Although Olatunji argues that Dakota L. received less discipline than Olatunji for similar violations, the separation proposals reveal that Dakota L. had 12 prior disciplinary actions, while Olatunji had 16 prior disciplinary actions. *Compare* AT&T App. at 101–102 (Olatunji's separation proposal), *with* 163–64 (Dakota L.'s separation proposal). For these reasons, Dakota L. is not a proper comparator.

Olatunji's remaining comparators fare no better. Jerry B. was placed on a DML by another supervisor. "Nearly identical" circumstances exist when the proposed comparator "shared the same supervisor or had their employment status determined by the same person[.]" *Hardison*, 2022 WL 2668514, at *3. The undisputed evidence shows that Jerry B. was placed on a DML by another supervisor, and by the time Dvorak became his supervisor, his DML had nearly expired. AT&T App., Decl. of Dvorak at 127, ¶ 48 (ECF No. 49). Consequently, despite Olatunji's contentions, Dvorak could not terminate Jerry B. for "any infraction" because he was not on a DML while under Dvorak's supervision. Thus, Jerry B. is not a proper comparator.

15

Finally, Olatunji presents no evidence of Tony W.'s policy violations or disciplinary history. Indeed, Olatunji testified at his deposition that he had no personal knowledge of Tony W.'s job performance. *Id.*, Pl.'s Dep. at 221–22, 3:17:58–3:18:17 (ECF No. 49); *id.* at 223–24, 3:22:41–3:24:16. Olatunji's "passing reference[s]" to Tony W., without evidence, are insufficient to establish that he was similarly situated to Olatunji and that the conduct that drew the adverse employment decision was nearly identical to Olatunji's. *Hardison*, 2022 WL 2668514, at *3. As Olatunji lacks evidence of a similarly situated comparator, his discrimination claim does not survive summary judgment.

*Retaliation*

To establish a prima facie case of unlawful retaliation, Olatunji must prove (1) that he engaged in protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). AT&T argues that Olatunji's retaliation claim cannot succeed because he has not shown that he engaged in protected activity and that a causal connection existed between Olatunji's alleged protected activity and termination.

1. Protected Activity

An employee has engaged in an activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a);

*Long*, 88 F.3d at 304; *Quintana v. Fujifilm N. Am. Corp.*, 96 F. Supp. 3d 601, 618 (N.D. Tex. 2015) (discussing definition of protected activity under Texas Commission on Human Rights Act). "The first of these is known as the 'opposition clause;' the second as the 'participation clause.'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016).

Here, Olatunji presents an opposition clause case because the participation clause is not at issue when the employee files an EEOC charge after the adverse employment action. *Byers v. Dall. Morning News*, 209 F.3d 419, 428 (5th Cir. 2000). "To satisfy this opposition requirement, [Olatunji] need only show that [he] had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (quoting *Byers*, 209 F.3d at 428). However, "[t]he Fifth Circuit has made plain that 'a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute a protected activity.'" *Obondi v. UT Sw. Med. Ctr.*, 2017 WL 2729965, at *13 (N.D. Tex. June 23, 2017) (Boyle, J.) (quoting *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015)). Generally invoking Title VII buzzwords like "harassment" or "retaliation" "does not itself constitute 'protected activity' within the meaning of Title VII, [if the] complaint lack[s] a racial or gender basis." *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam).

Olatunji alleges that he engaged in protected activity on two occasions. First, at the September 15, 2020, meeting with Freeman, Counts, and Doblado, and

17

second on January 4, 2021, during the confrontation with Dvorak at McDonald's. Pl.'s Br. in Opp. at 3 (ECF No. 56). At the September 15 meeting, Olatunji reported that he felt as though there was "a target on [his] back," he believed that Dvorak "overstepped the boundaries between good management and harassment," and he felt that Dvorak's behavior was "harassment." Pl.'s App. at 16–17 (ECF No. 58). Although Olatunji complained that Dvorak subjected him to "harassment," Olatunji failed to allege that Dvorak—or anyone else at AT&T—discriminated against him based on his race. AT&T App., Decl. of Freeman at 3, ¶ 9 ("Mr. Olatunji did not raise any concerns or make any statements [Freeman] understood to be about race, color, or any protected characteristic."). His complaints at the September 15 meeting, therefore, do not constitute protected activity. *Jackson v. Dall. Cnty. Juvenile Prob. Dep't*, 2007 WL 2187250, at *10 (N.D. Tex. July 30, 2007) (Lynn, J.) (finding that memos that alluded to harassment but lacked details regarding any factor to which Title VII applies were not protected activities).

The Court carefully considered Olatunji's allegations at the September 15 meeting that Dvorak accused him of using "ghetto language." Olatunji highlights that he shared with Freeman, Counts, and Doblado that Dvorak "used [racist] language." Pl.'s App. at 17 (ECF No. 57). However, upon review of the record, Dvorak did not himself use the words "ghetto language" to disparage Olatunji. Rather, a customer complained to Dvorak that Olatunji used "ghetto language" while completing a job assignment, and Dvorak relayed that complaint to Olatunji. *Id.* ("[C]ustomer told [Dvorak] that [Olatunji] used ghetto language – felt it was a

racist comment."); AT&T App. at 252 (ECF No. 49) (email from Olatunji explaining that a "customer was clearly disrespectful" and "even used racist statements, alleging to [Dvorak] that [Olatunji] used "Ghetto Language" and "Customer told [Dvorak] that I used "Ghetto Language" during dispatch"); AT&T App., Pl.'s Dep. at 183–184, 9:36:32–9:36:50 (ECF No. 49) (Olatunji confirming that Dvorak "reported to [him] that a customer said [he] use[d] ghetto language"). Therefore, this customer statement does not transform his vague allegations of harassment into protected activity.

Olatunji also contends that he engaged in protected activity on January 4, 2021, during a confrontation with Dvorak. In his own affidavit in response to AT&T's Motion for Summary Judgment, Plaintiff alleges that he confronted Dvorak, accused him of "harassment," and threatened that he would be "filing an EEOC complaint." Pl.'s App. at 8, ¶ 38 (ECF No. 57). Although Olatunji's vague reference to "harassment" does not constitute protected activity, it is arguable that Olatunji's "notice of his intent to file" an EEOC complaint was protected activity. *See Garcia v. City of Amarillo*, 2020 WL 4208060, at *12 (N.D. Tex. July 22, 2020) (Kacsmaryk, J.) ("The limited Fifth Circuit case law on the issue also indicates that a notice of intent to file [an EEOC charge] is protected activity.").

2. Adverse Employment Action and Causal Connection

Olatunji must still establish a causal connection between his protected activity on January 4, 2021, and an adverse employment action. "A 'causal link' is established when the evidence demonstrates that 'the employer's decision to

19

terminate was based in part on knowledge of the employee's protected activity.'"

*Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)).

"[T]he mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough" to prove a causal connection between the protected activity and the adverse employment action. *Smith v. Kendall*, 2024 WL 4442040, at *7 (5th Cir. Oct. 8, 2024) (per curiam) (emphasis in original) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)). However, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson*, 110 F.3d at 1188 (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)); *Gupta v. Qwuest Gov. Servs., Inc.*, 2023 WL 2025056, at *13 (N.D. Tex. Feb. 14, 2023) (Lindsay, J.) ("For temporal proximity to alone establish prima facie causation, it is required to be 'very close.'").

Olatunji was placed on a PN on August 18, 2020; placed on a WR on March 4, 2021; placed on a DML on October 27, 2021; and terminated on January 7, 2022. AT&T App. at 101–02 (ECF No. 49). Olatunji presents evidence that he informed Dvorak of his intent to file an EEOC complaint on January 4, 2021. Pl.'s App. at 8, ¶ 38 (ECF No. 57). Although AT&T argues that there is not a sufficient causal connection between Olatunji's protected activity and either the date of DML or termination, this argument ignores that "[d]isciplinary write-ups that are the basis

for more serious consequences may be adverse employment actions." *Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 586 (S.D. Tex. Jan. 20, 2025) (citing *Hernandez v. Sikorsky Support Servs., Inc.*, 495 F. App'x 435, 438 (5th Cir. 2012)); *see also Hamilton v. Dall. Cnty.*, 79 F.4th 494 (5th Cir. 2023) (clarifying that "a plaintiff need only show that [he] was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment'—just as [Title VII] says.").

There is a two-month gap between Olatunji's protected activity on January 4, 2021, and his WR on March 4, 2021. As AT&T succinctly explains, a WR is part of AT&T's progressive disciplinary process that could, and did, lead to termination. AT&T's Br. at 3 (ECF No. 48); *see also Brooks*, 86 F. Supp. 3d at 586. And "[t]he Fifth Circuit has 'held that a period of two-and-a-half months, . . . two months, . . . and six-and-a-half weeks . . ., are close enough to show a causal connection." *Walker v. Tarrant Cnty. Sheriff's Off.*, 2026 WL 172508, at *6 (N.D. Tex. Jan. 22, 2026) (Ray, J.) (quoting *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015)); *see also Garcia v. Pro. Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) ("But [the plaintiff's] two-and-one-half-month period still fits comfortably within the time periods of both our case law and [*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)] to establish causation."); *Gooden v. Lhoist N. Am. of Tex., LLC*, 2026 WL 183775, at *7 (N.D. Tex. Jan. 23, 2026) (Pittman, J.) (finding a period of two months between protected activity and adverse employment action to be sufficient to establish

21

causation).[2] Any delay in assigning this WR seems to be due to Olatunji taking a two-month leave of absence after his confrontation with Dvorak on January 4, 2021. AT&T App., Decl. of Dvorak at 120, ¶ 17 (ECF No. 49) (explaining that Dvorak "had to wait until [Olatunji] returned to work to conduct an investigatory interview"). The Court therefore finds that the evidence is sufficient to raise a genuine issue of material fact as to the causation element of Olatunji's retaliation prima facie case.

### *Legitimate, Nondiscriminatory Reason*

Even if Olatunji could establish a prima facie case of discrimination or retaliation, AT&T proffers evidence showing that it had a legitimate nondiscriminatory reason for terminating Olatunji—that he violated written company policy by failing to report to a supervisor or the customer that he would not complete an assigned job. "If an employee establishes a prima facie case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions." *King v. Life Sch.*, 2011 WL 1562964, at *5 (N.D. Tex. Apr. 26, 2011) (Ramirez, J.) (citing *Alvarado v. Tex.*

---

[2] The Court notes that there is some disagreement on whether two months is enough to establish causation when the plaintiff seeks to establish a causal link through temporal proximity alone. *See Perez v. Fed. Express Corp.*, 2015 WL 5916286, at *5 (N.D. Tex. Oct. 7, 2015) (Kinkeade, J.); *see also Shahrashoob v. Tex. A&M Uni.*, 125 F.4th 641, 653–54 (5th Cir. 2025) ("We have recognized that a plaintiff can show pretext through temporal proximity plus *significant* record evidence.") (emphasis in original). But regardless of whether Olatunji can prove causation for his retaliation prima facie case, he still cannot prevail because he cannot overcome AT&T's legitimate, nondiscriminatory reasons for his termination.

*Rangers,* 492 F.3d 605, 611 (5th Cir. 2007)). AT&T need only articulate a lawful reason, regardless of its persuasiveness or credibility. *Bodenheimer v. PPG Indus.,* 5 F.3d 955, 958 (5th Cir. 1993).

AT&T offers uncontroverted evidence showing that Olatunji's various policy violations warranted progressive disciplinary action and his failure to complete his assigned job was the reason for his termination. Indeed, AT&T connects each of Olatunji's discipline measures to his violations of various aspects of AT&T's policies. AT&T App., Decl. of Freeman at 4–7, ¶ 11–21 (detailing Olatunji's performance deficiencies), Decl. of Fouche at 104–08, ¶¶ 4–14 (same), Decl. of Dvorak at 117–21, ¶¶ 8–27 (same) (ECF No. 49). And AT&T also highlights that Olatunji's actions violated his PIP and Manager's Directive. AT&T App. at 114 ("Tech must call manager to report on progress . . . .), 144–46 (setting forth areas of improvement including calling or texting back all customers at the end of each day).

Violations of company policy and noncompliance with a performance improvement plan are legitimate, nondiscriminatory reasons justifying discipline and termination. *See Ware v. AutoZoners, L.L.C.,* 2023 WL 2521872, at *1 (5th Cir. Mar. 14, 2023) (per curiam) ("A violation of company policy is typically a legitimate, nondiscriminatory reason for firing the offending employee."); *Watts v. L-3 Commc'ns Corp.,* 2013 WL 3789868, at *6 (N.D. Tex. July 22, 2013) (Fish, J.) ("A violation of company policy is unquestionably a legitimate, nondiscriminatory reason for termination."); *Harry v. Dall. Hous. Auth.,* 2016 WL

67769, at *6 (N.D. Tex. Jan. 5, 2016) (Lynn, J.) ("Poor performance and noncompliance with a performance improvement plan are legitimate, nondiscriminatory reasons for terminating an employee."). Indeed, Olatunji does not deny that he violated company policy when he failed to inform his manager that he would not complete his final job. AT&T App., Pl.'s Dep. at 214–15, 2:28:43–2:28:54 (ECF No. 49) ("I have no problem admitting that I broke a rule that day. Y'all wasting all this time trying to prove that I broke a rule. I never said I didn't break a rule that day. Yes, I broke a rule. I didn't call the manager. I didn't call the customer. Okay. But guess what? A lot of people break rules."). AT&T has met its summary judgment burden by producing evidence to support its legitimate, nondiscriminatory and nonretaliatory reason for Olatunji's disciplinary actions and termination.

### *Pretext*

Olatunji has not asserted a mixed motive theory and instead only argues that AT&T's proffered justifications are pretext. "Under the pretext alternative, [Olatunji] must introduce 'some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination [or retaliation] was the actual reason.'" *See King*, 2011 WL 1562964, at *5 (citing *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998)). To carry this burden, Olatunji must "rebut each nondiscriminatory or nonretaliatory reason articulated by [AT&T]." *McCoy*, 492 F.3d at 557.

Olatunji contends that AT&T's justification for his termination is pretextual, and provides evidence that (1) AT&T deviated from company policy that "technicians should not dispatch after 8 [P.M.]," (2) deviated from company policy allowing an employee to refuse a rule or order "if he sincerely feels his personal safety would be jeopardized," (3) AT&T did not provide him with his Day in Court to contest his termination, and (4) "evident disparity" in treatment of employees who committed workplace violations while on a DML. Pl.'s Br. in Opp. at 1–2 (ECF No. 56).

Olatunji's arguments about AT&T's purported policy deviations miss the point. Any existence of a policy—formal or informal—that prohibited technicians from dispatching after 8 P.M. or allowed technicians to refuse a job for fear of their safety does not excuse Olatunji's failure to call his supervisor or the customer to report that he would not complete his last job assignment. Olatunji wholly violated AT&T policy, his PIP, and his Manager's Directive requiring him to update his supervisor on his progress. Even if Olatunji feared for his safety, he did not communicate this fear to his supervisor. Rather, when asked about the job by his supervisor, Olatunji responded, "I'm off" and "[c]all u tomorrow." AT&T App. at 151 (ECF No. 49).

Olatunji also states that AT&T's justifications are pretextual because he was denied his Day in Court to contest his termination. However, the uncontested evidence reveals that AT&T did provide Olatunji with his Day in Court, but he did not attend. AT&T App. at 99 (sending the Day in Court invitation to Olatunji's

union representative); *id.*, Pl.'s Dep. at 218–19, 2:38:12–2:38:22 ("By the time [Olatunji] woke up, [the Day in Court] was done, it was over."). Olatunji states that he did not attend his Day in Court "because nobody ever informed [him] of the scheduled date or time." Pl.'s Br. in Opp. at 7 (ECF No. 56). Olatunji testified that his union representative "was supposed to have . . . given [him] forewarning." AT&T App., Pl.'s Dep., at 219, 2:38:37–2:38:50 (ECF No. 49). Olatunji has not adduced evidence showing that AT&T intentionally failed to provide timely notification of his Day in Court. Rather, it appears that it was his union's responsibility—not AT&T's—to timely inform him of his Day in Court, which it failed to do. Thus, there is no evidence that Olatunji's failure to attend his Day in Court suggests pretext.

Finally, Olatunji argues that there were "evident" disparities in the treatment of employees who committed workplace violations while on a DML. Specifically, Olatunji alleges that Dakota L. received more warnings and more lenient treatment while he was on a DML. In essence, Olatunji claims that the disparate treatment of similarly situated employees—Dakota L. Jerry B., and Tony W.—is evidence of pretext. As explained above, these individuals are not proper comparators because they are not similarly situated to Olatunji. Because Olatunji has "not offered any competent evidence of pretext or disparate treatment toward *actual* comparators, plaintiff has failed to raise a genuine issue of material fact." *Vargas v. Tex. A&M Uni.*, 2007 WL 150484, at *7 (S.D. Tex. Jan. 16, 2007) (emphasis added).

Olatunji has not put forth competent evidence to show that AT&T's justifications for his discipline and termination are pretextual. Further, two of the supervisors who approved Plaintiff's termination are members of Olatunji's protected class, which supports an inference that his termination was not race related. *See Watts*, 2013 WL 3789868, at *10; AT&T App., Decl. of Freeman at 2, 4, ¶¶ 4, 12 (ECF No. 49). Plaintiff has failed to present sufficient evidence to show that AT&T's actions were pretextual, and therefore, AT&T is entitled to summary judgment.

*Hostile Work Environment*

Although Olatunji does not expressly bring a claim for harassment, AT&T construes his Third Amended Complaint as plausibly asserting a claim for harassment. AT&T's Br. at 22–25 (ECF No. 48) ("Plaintiff's Complaint never specifically alleges a hostile work environment claim, but even under the most generous reading of his Complaint, a harassment claim would fail as a matter of law."). Olatunji does not coherently address AT&T's hostile work environment arguments. *See* Pl.'s Br. at 25 (ECF No. 52); Pl.'s Br. at 25 (ECF No. 56).

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). To establish this cause of action, the plaintiff must show: (1) they belong to a protected class; (2) they were subject to unwelcome harassment; (3) the harassment was based on the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should

have known of the harassment and failed to take prompt remedial action. *Id.*; *Gaudette v. Angel Heart Hospice, L.L.C.*, 2025 WL 1419720, at *2 (5th Cir. May 16, 2025) (per curiam) (internal citation and quotation marks omitted). Importantly, "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997).

Olatunji does not produce evidence of actionable harassment that rises to the level of a hostile work environment. To the extent that Olatunji contends that Dvorak relaying a customer complaint that Olatunji used "ghetto language" is evidence of a hostile work environment, as explained, the record shows that the comment is attributable to a customer, not Dvorak or anyone else at AT&T. And Dvorak's unannounced visits to Plaintiff's worksites and criticism of Olatunji's work performance do not rise to the level of hostile work environment. *Cobos v. Decypher Tech., LTD*, 2025 WL 3215364, at *9 (W.D. Tex. Nov. 10, 2025) ("[C]riticism of an employee's work performance and careful monitoring of job performance generally do not amount to a hostile work environment."). Finally, AT&T directing Olatunji to complete his work and attend mandatory training cannot constitute actionable harassment based on his race. Thus, AT&T is entitled to summary judgment on any hostile work environment claim asserted by Olatunji, if any. *See Sedwick v. McDonough*, 2025 WL 2690110, at *10 (N.D. Tex. Aug. 22, 2025) (Rutherford, J.) (granting summary judgment as to hostile work

environment claim when the plaintiff failed to identify any evidence that alleged harassment was based on race), *adopted by* 2025 WL 2689915 (N.D. Tex. Sept. 19, 2025) (Scholer, J.).

### *Recommendation*

For the reasons stated, the District Judge should **GRANT** Defendant's Motion for Summary Judgment (ECF No. 47) and dismiss Olatunji's claims with prejudice.

**SO RECOMMENDED.**

March 4, 2026.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

29

## <u>INSTRUCTIONS FOR SERVICE AND</u>
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).